IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| OMNI TECHNOLOGIES, LLC, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION 20-0175-WS-B |
| KNOW INK, LLC, | ) |
| Defendant. | ) |

ORDER

This matter comes before the Court on defendant Know Ink, LLC's Motion to Dismiss or in the Alternative to Transfer Venue (doc. 10). The Motion has been briefed and is now ripe for disposition.

**I.    Background.**

Plaintiff, Omni Technologies, LLC, brought this action in this District Court against defendant, Know Ink, LLC.[1] The dispute arises from a commercial relationship between the parties, as memorialized in a series of contracts. Pursuant to the first of those agreements, entered into on July 21, 2015, Omni was designated the sole distributor of Know Ink's electronic poll books, known as "Poll Pads," for the states of Alabama and Mississippi, with the exclusive right to market, promote and solicit sales of Poll Pads in those territories. (Doc. 1, ¶ 6.) After

---

[1] Federal jurisdiction appears properly predicated on the diversity provisions of 28 U.S.C. § 1332, inasmuch as the Complaint adequately alleges complete diversity of citizenship between plaintiff and defendant (including diverse citizenship of the members of each LLC party), and affirmatively pleads an amount in controversy far in excess of the $75,000 jurisdictional minimum, exclusive of interest and costs. (Doc. 1, ¶¶ 1-3.) Indeed, the unpaid sales commissions alone, which are merely a portion of the damages that Omni seeks to recover in this action, are alleged to be in an amount exceeding $263,000. (*Id.*, ¶ 15.)

some disagreement emerged, the parties renegotiated their agreements and entered into a new Distributor Agreement (the "Contract") on March 31, 2017.  (*Id.*, ¶ 9.)[2]

By the express terms of the Contract, "KNOW iNK hereby appoints and grants [Omni] the exclusive and non-assignable right to market, promote and solicit orders on behalf of KNOW iNK" in the designated "Distributor Territory" of "State of Alabama and all counties therein." (Doc. 1, Exh. B, Art. II, § 1 & Exh. B.)  The Contract further provided that Know Ink would provide certain specified compensation to Omni for these distributor services, in the form of commissions in prescribed amounts and percentages.  (*Id.*, Art. II § 4 & Exh. D.)  The Contract was for a term of three years, subject to prior termination "with cause" as defined in the Contract.  (*Id.*, Art. VIII, § 3.)  In the event of termination, the Contract specified that "the parties shall not be relieved of … its [*sic*] obligation to pay any monies due, or to become due, as of or after the date of termination."  (*Id.*, Art. VIII, § 4.)  On its face, the Contract "shall be governed by the laws of the State of Missouri."  (*Id.*, Art. X, § 5.)

According to the well-pleaded factual allegations of the Complaint, which are taken as true for purposes of defendant's Rule 12(b)(6) Motion,[3] as of September 1, 2017, nine Alabama counties had purchased Know Ink's Poll Pads, but Know Ink attempted to divert credit for those sales away from Omni "in an effort to circumvent the parties' compensation agreement."  (Doc. 1, ¶ 11.)  The Complaint goes on to allege that on April 2, 2018, Know Ink transmitted to Omni a "Notice to Cure Breach of Contract and Demand for Compliance with Distributor Responsibilities," itemizing eight alleged failures by Omni that were "generic in nature" and

---

[2] A copy of the Contract is attached to the Complaint; moreover, that document is central to Omni's claims and its contents are not in dispute.  Accordingly, the Contract is properly considered in analyzing defendant's Motion to Dismiss under Rule 12(b)(6) without converting the Motion into one for summary judgment.  *See, e.g., Horlsey v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (explaining "incorporation by reference" doctrine, "under which a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed," in the sense that "the authenticity of the document is not challenged") (citations omitted).

[3] *See, e.g., Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (in reviewing Rule 12(b)(6) motion, court must "accept[] the facts alleged in the complaint as true," "draw[] all reasonable inferences in the plaintiff's favor," and "limit[] our review to the four corners of the complaint"); *but see Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) ("Legal conclusions without adequate factual support are entitled to no assumption of truth.").

demanding compliance by Omni within 30 days.  (*Id.,* ¶¶ 12-13.)[4]  The Complaint further alleges that Omni responded to the Notice within two weeks, but "was unable to determine the exact nature of Know Ink's complaint or resolve the conflict."  (*Id.*, ¶ 14.)  Omni specifically pleads that it "fulfilled its obligations at its own time and expense," but that Know Ink breached the Contract by failing to pay Omni commissions owed on sales to 13 counties and denying Omni the opportunity to provide technical support to those counties.  (*Id.*, ¶¶ 15, 19.)

Based on these alleged facts and circumstances, Omni asserts a string of purely state-law claims against Know Ink, including causes of action for breach of contract, bad faith, conversion, unjust enrichment, and open account.  To the extent that any portion of Omni's Complaint may survive Rule 12(b)(6) scrutiny, Know Ink requests that venue be transferred to the United States District Court for the Eastern District of Missouri under 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses, in the interests of justice.  Omni opposes all relief sought in defendant's Motion.

**II.    Analysis.**

    **A.    Rule 12(b)(6) Motion.**

        ***1.    Governing Legal Standard.***

Defendant's Motion to Dismiss argues that each of the five claims asserted in the Complaint fails to state a claim upon which relief can be granted because it is inadequately pleaded.  To satisfy Rules 8(a) and 12(b)(6), Fed.R.Civ.P., a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," so as to "nudge[] [its] claims across the line from conceivable to plausible."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868

---

[4]    Plaintiff attached to the Complaint a Notice from Know Ink dated April 2, 2018; however, it does not appear to the be the same Notice identified in Paragraphs 12 and 13 of the Complaint.  In particular, while the Notice in the Complaint is described as a "Notice to Cure Breach of Contract and Demand for Compliance with Distributor Responsibilities" for the Alabama territory, the Notice appended at Exhibit D is titled a "Notice to Terminate Distributor Agreement" for the Mississippi territory.  (Doc. 1, Exh. D.)  Given this obvious disconnect and apparently incorrect exhibit, and pursuant to *Horsley*, the Court does not consider Exhibit D for purposes of this Order because that document does not appear central to plaintiff's claims.

(2009) (citation omitted).  "This necessarily requires that a plaintiff include factual allegations for each essential element of his or her claim." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012).  Thus, minimum pleading standards "require[] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  As the Eleventh Circuit has explained, *Twombly / Iqbal* principles require that a complaint's allegations be "enough to raise a right to relief above the speculative level." *Speaker v. U.S. Dep't of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 380 (11th Cir. 2010) (citations omitted).  "To survive a 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, … but must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010) (citations and internal quotation marks omitted).

### 2. Breach of Contract Claim (Count 1).

In Count 1 of the Complaint, Omni asserts a common-law claim against Know Ink for breach of contract, on the ground that "Know Ink has breached the contract by failing to remit payment as agreed and denying Omni's participation in the sales." (Doc. 1, ¶ 19.)  Defendant now argues that dismissal of Count 1 is appropriate because the Complaint does not properly plead the elements of a breach of contract claim under Missouri law.[5]

To be cognizable under Missouri law, a breach of contract claim requires a showing "that plaintiff performed or tendered performance pursuant to the contract." *Jennings v. SSM Health Care St. Louis*, 355 S.W.3d 526, 531 (Mo.App. E.D. 2011); *see also Williams v. Medalist Golf, Inc.*, 910 F.3d 1041, 1045 (8th Cir. 2018) ("Under Missouri law, a breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that

---

[5] There is some uncertainty in the briefing about whether Missouri law or Alabama law applies to the causes of action pleaded in the Complaint, with the parties frequently citing authorities from each jurisdiction to ensure that their bases are covered.  As noted, however, Article X, § 5 of the Contract specifies that "[t]his Agreement shall be governed by the laws of the State of Missouri."  Moreover, both sides assert in their respective briefs that Missouri law governs all of Omni's claims. (Doc. 11, PageID.62 ("It is clear … that Missouri law applies to the lawsuit, as each of Omni's claims is based on its contractual relationship with Know Ink."); doc. 20, PageID.129 ("Omni agrees with Know Ink that Missouri law applies to this dispute.").) In light of the parties' agreement on this point, the Court will apply Missouri law to all claims for purposes of adjudicating the Rule 12(b)(6) Motion.

plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff.") (citation and internal marks omitted). Know Ink argues that the Complaint lacks factual allegations to support the performance element, inasmuch as Omni's pleading concedes that Know Ink sent it multiple notices of breach and that the parties never resolved that issue. On that basis, Know Ink reasons, "it is reasonable to infer that Plaintiff did not perform pursuant to the Contract, as required in order to state a claim for breach of contract." (Doc. 11, PageID.64.)

The Court disagrees. Defendant's argument overlooks the Complaint's specific allegation that "Omni fulfilled its obligations" under the Contract. On its face, that allegation supports a reasonable inference that Omni performed pursuant to the Contract. Additionally, Know Ink's rather contorted construction of the factual allegations relating to the "Notice to Cure Breach of Contract" – and specifically its assertion that those allegations support a reasonable inference of non-performance – would turn the applicable Rule 12(b)(6) standard on its head. For purposes of this Motion, the Court draws all reasonable inferences in the plaintiff's favor, not the defendant's. *See, e.g., Carruth v. Bentley*, 942 F.3d 1047, 1053 (11th Cir. 2019) (in reviewing a Rule 12(b)(6) dismissal, "[w]e accept all facts alleged in the complaint as true and draw all inferences in the plaintiff's favor"). For the reasons already stated, the Complaint plainly supports a reasonable inference that Omni did perform under the Contract; therefore, Omni's pleading of Count 1 is not fatally defective in the manner asserted by Know Ink, and dismissal on that basis is inappropriate.[6]

### 3. *Bad Faith Claim (Count 2).*

In Count 2 of the Complaint, Omni asserts a claim labeled "bad faith." From the specific allegations of that count, however, it is difficult to discern the precise theory under which plaintiff is traveling. In one paragraph, Omni alleges that "Know Ink's acts and omissions amounted to the tort of bad faith." (Doc. 1, ¶ 22.) In another, Omni cites "Know Ink's breach of its duty of good faith and fair dealing." (*Id.*, ¶ 24.)

---

[6] Similarly, defendant's contention that "Omni's allegations establish that Omni failed to perform its obligations under the contract and breached the contract" (doc. 23, PageID.141) hinges on a restrictive, one-sided reading of the Complaint that is irreconcilable with black-letter legal principles governing Rule 12(b)(6) motions.

In seeking dismissal of Count 2, Know Ink insists that "Missouri law does not recognize 'bad faith' as an independent tort," at least outside the insurance context. (Doc. 23, PageID.141.) Omni does not identify any authority suggesting that there exists a tort of bad faith under Missouri law in the absence of a bad-faith refusal to settle by an insurance company. Nonetheless, in response to the Rule 12(b)(6) Motion, Omni explains that "[i]t is the breach of the covenant of good faith and fair dealing that gives rise to the bad faith claim Plaintiff makes here." (Doc. 20, PageID.128.) Clearly, Missouri law does authorize a claim for breach of the covenant of good faith and fair dealing. *See, e.g.*, *Bishop & Associates, LLC v. Ameren Corp.*, 520 S.W.3d 463, 471 (Mo. 2017) ("Under Missouri law, a duty of good faith and fair dealing is implied in every contract."). Know Ink does not argue otherwise.[7]

Under these circumstances, the Motion to Dismiss is **granted** insofar as Count 2 brings a claim for the "tort of bad faith," but is **denied** insofar as Count 2 is a cause of action for breach of the implied duty of good faith and fair dealing. That is to say, Omni may proceed as to Count 2, but only under a theory of breach of the covenant of good faith and fair dealing.

### 4.    *Conversion Claim (Count 3).*

Count 3 of the Complaint is framed as a claim for conversion, predicated on allegations that "[i]n completing sales of its Poll Pads without paying Omni its commission, Know Ink has unlawfully obtained monies rightfully belonging to Omni and depriving Omni of such funds." (Doc. 1, ¶ 26.) Essentially, then, Omni's conversion claim is grounded in a theory that Know

---

[7]     In its reply brief, Know Ink argues for the first time that Omni has not sufficiently pleaded a claim for breach of the implied covenant of good faith and fair dealing. (Doc. 23, PageID.142-43.) Courts generally do not consider new, previously available arguments presented in a reply brief. *See, e.g., GPI-AL, Inc. v. Nissan North America, Inc.*, 2019 WL 5269100, *5 (S.D. Ala. Oct. 17, 2019) (explaining that "it is improper for a litigant to present new arguments in a reply brief and that new arguments presented in reply briefs are generally not considered by federal courts") (citation and internal marks omitted); *SSAB Alabama, Inc. v. Kem-Bonds, Inc.*, 2017 WL 6612778, *6 n.10 (S.D. Ala. Dec. 27, 2017) ("new, previously available arguments cannot be presented for the first time in a reply brief"). Even if this argument were properly raised, the Complaint appears to plead a plausible cause of action for breach of the implied covenant of good faith and fair dealing under Missouri law. *See generally City of St. Joseph v. Lake Contrary Sewer Dist.*, 251 S.W.3d 362, 370 (Mo.App. W.D. 2008) ("The implied covenant of good faith prohibits contracting party from acting in such a manner as to evade the spirit of the transaction or … to deny the other party the expected benefit of the contract.") (citations omitted).

Ink's failure to pay $263,564 in commissions owed to Omni is tantamount to conversion of those funds for its own use.

In its Motion to Dismiss, Know Ink maintains that these factual allegations do not plead a cognizable claim for conversion under Missouri law because the claim is for recovery of money, rather than specific chattel. Missouri case law recognizes such a distinction; indeed, Missouri courts have explained, "Money represented by a general or ordinary debt is not subject to a claim for conversion. … As a general rule a claim for money may not be in conversion because conversion lies only for a specific chattel which has been wrongfully converted." *Gadberry v. Bird*, 191 S.W.3d 673, 675 (Mo.App. E.D. 2006) (citation omitted); *see also Perez v. Boatmen's Nat'l Bank of St. Louis*, 788 S.W.2d 296, 299 (Mo.App. E.D. 1990) ("There is, however, an additional rule of law that conversion does not lie for a taking of money, only for a taking of chattel."). Missouri courts have recognized an exception when a plaintiff places funds in the custody of a defendant for a specific purpose, but the defendant diverts them to a different purpose. *See Gadberry*, 191 S.W.3d at 675-676 ("misappropriated funds placed in the custody of another for a definite purpose may be subject to a suit for conversion, when the plaintiff delivers funds to the defendant for a specific purpose, and the defendant diverts those funds to another, different purpose"). On its face, that exception is inapplicable here.

Omni's only counterargument is that the allegedly wrongfully withheld commissions at issue constitute "specific chattel" pursuant to *In re Estate of Boatright*, 88 S.W.3d 500 (Mo.App. S.D. 2002). The *Boatright* court explained that "money can be an appropriate subject of conversion when it can be described or identified as a specific chattel." *Id.* at 506 (citation and internal quotation marks omitted). In that case, the Missouri Court of Appeals found the requisite specific chattel when the plaintiffs sought to recover "the sum of $66,288.50, which constituted the proceeds received from the sale of Robert's property that belonged to Robert at the time of his death." *Id.* at 507. Omni would liken the unpaid commissions in this case to the sale proceeds in *Boatright*; however, the analogy appears ill-fitting. For aught the Complaint shows, Know Ink's customers purchased Poll Pads with undifferentiated funds, commingling the sales price, the commission, applicable taxes, and so forth. In that circumastance, Omni seeks to recover ordinary debt or money. There is no allegation that Know Ink's customers ever made a specific commission payment of segregated, specifically identified funds. Rather, it appears that the commissions were simply part of an undifferentiated whole in the sales transaction. This

scenario, which plaintiff appears to acknowledge in its Complaint, would appear directly contradictory of Omni's "specific chattel" theory.  *See generally Express Scripts, Inc. v. Walgreen Co.*, 2009 WL 4574198 (E.D. Mo. Dec. 3, 2009) ("By its nature, money passes by delivery and its identity is lost by being changed into other money or its equivalent. … The plaintiff's action was not for conversion of the checks but of the money collected on the checks; hence, there was no conversion.") (citations omitted).

Based on the contents of the pleading and the parties' specific arguments in briefing the Motion to Dismiss, the Court concludes that Omni's conversion claim is for money represented by a general or ordinary debt, not for specific chattel.  Therefore, Count 3 is not cognizable under Missouri law and is properly dismissed at this time.

### 5.    *Unjust Enrichment Claim (Count 4).*

In Count 4 of the Complaint, Omni pleads a claim for unjust enrichment, alleging that "Know Ink has received and retained the benefit of sales proceeds at the expense of Omni," resulting in Know Ink being unjustly enriched. (Doc. 1, ¶¶ 29-30.)  Defendant seeks dismissal of this claim on two grounds, neither of which is meritorious.  First, Know Ink maintains that Count 4 is insufficiently pleaded because it "contains no express allegation that it would be unjust or inequitable for Defendant to retain any funds under the Contract." (Doc. 11, PageID.68.)  But the Complaint is replete with allegations sufficient to support that element of the claim.  For example, the Complaint alleges that Know Ink retained the subject funds "without a legitimate or arguable reason for doing so" (doc. 1, ¶ 22), that it "unlawfully obtained monies rightfully belonging to Omni" (*id.*, ¶ 26), and that through its conduct "Know Ink has been unjustly enriched" (*id.*, ¶ 30).  Under any fair reading of the Complaint, these and other allegations taken in the aggregate are sufficient to plead the element that "it would be unjust to allow the defendant to retain the benefit."  *Miller v. Horn*, 254 S.W.3d 920, 924 (Mo.App. W.D. 2008).

Second, Know Ink contends that Count 4 "should be dismissed because Plaintiff has also asserted a claim for breach of an express contract." (Doc. 11, PageID.68.)  It is true, of course, that under Missouri law "a plaintiff may not recover under both an express contract and unjust enrichment." *Affordable Communities of Missouri v. Federal Nat'l Mortg. Ass'n*, 714 F.3d 1069, 1077 (8th Cir. 2013) (citations and internal quotation marks omitted).  It is equally true that federal courts routinely "have allowed plaintiffs to plead alternative theories for unjust enrichment alongside a claim for breach of an express contract." *Moore v. Compass Group USA,*

*Inc.*, 2019 WL 4723077, *10 (E.D. Mo. Sept. 26, 2019) (citations omitted); *see generally* Rule 8(d)(2), Fed.R.Civ.P. ("A party may set out 2 or more statements of a claim … alternatively or hypothetically, either in a single count or defense or in separate ones.").[8]  That is what Omni has done here.  Defendant's objection is not persuasive, and the Motion to Dismiss is properly **denied** as to Count 4.

### 6. *Open Account Claim (Count 5).*

Defendant also moves for dismissal of the claim for open account under Missouri law.  As pleaded, Count 5 alleges that the Contract required Know Ink to pay Omni its commissions with 10 days of payment by any Alabama county purchasing Poll Pads, and further required Know Ink to provide Omni with statements of all sales, but that Know Ink has not fulfilled those requirements.  (Doc. 1, ¶¶ 33-35.)  According to defendant, the Complaint "does not allege any of the required elements of an action on account and fails to state a claim." (Doc. 11, PageID.69.)

Under Missouri law, the elements of a claim for action on account include "1) defendant requested plaintiff to furnish merchandise or services, 2) plaintiff accepted defendant's offer by furnishing such merchandise or services, and 3) the charges were reasonable." *Home Service Oil Co. v. Cecil*, 513 S.W.3d 416, 419-20 (Mo.App. S.D. 2017).  The Court finds that, construing all reasonable inferences in favor of Omni, the Complaint has sufficiently pleaded each of these elements.  Therefore, the Motion to Dismiss is **denied** as to Count 5.

### B. Motion to Transfer Venue.

In addition, and in the alternative to its Rule 12(b)(6) Motion, Know Ink requests that venue be transferred to the Eastern District of Missouri pursuant to 28 U.S.C. § 1404(a).  That statute provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been

---

[8]  In its Reply, Know Ink contends that Count 4 should be dismissed because alternative pleading is inappropriate here, inasmuch as "[n]o party disputes the enforceability of the contract at issue herein." (Doc. 23, PageID.146.)  To the Court's knowledge, however, defendant has made no binding admissions and entered into no binding stipulations to that effect.  Plaintiff is entitled to maintain both alternative claims unless and until at least such time as either (i) defendant conclusively admits to the validity and enforceability of the Contract, or (ii) there is a judicial determination to that effect.  In the interim, Omni may plead and pursue both causes of action in the alternative.

brought." *Id.* Relevant considerations in that discretionary transfer inquiry include "(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005) (citations omitted). For purposes of a § 1404(a) analysis, "[t]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Halbert v. Credit Suisse AG*, 358 F. Supp.3d 1283, 1287 (N.D. Ala. 2018) (citations omitted); *see also Gubarev v. Buzzfeed, Inc.*, 253 F. Supp.3d 1149, 1167 (S.D. Fla. 2017) ("The plaintiff's choice of forum is generally a factor that heavily weighs against transfer."). Moreover, it is Know Ink's burden to establish that the Eastern District of Missouri is more convenient than the Southern District of Alabama forum selected by Omni. *See In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) ("in the usual motion for transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient"); *Fruitstone v. Spartan Race Inc.*, --- F. Supp.3d ----, 2020 WL 2781614, *3 (S.D. Fla. May 29, 2020) ("The party seeking transfer bears the burden of demonstrating entitlement.").

There is no reasonable basis for disputing that venue would properly lie in the Eastern District of Missouri. After all, the relevant statute provides that "[a] civil action may be brought in … a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). Here, the only defendant is Know Ink, a Missouri limited liability corporation whose principal place of business is in the Eastern District of Missouri. For that reason, the Court summarily rejects any suggestion by plaintiff that the Eastern District of Missouri would be an improper forum for transfer of venue. Clearly, the case "might have been brought" in that district, as required for a § 1404(a) transfer to be permissible.

That said, Know Ink's showing falls short of meeting its burden under § 1404(a). Defendant makes only two arguments in support of its position that the Eastern District of Missouri is a more convenient venue than this District. First, Know Ink states that "the key witnesses and relevant documents are located in Missouri because agents and employees of

Defendant are located in Missouri." (Doc. 11, PageID.71.)  As other courts have noted, "the significance of the convenience of witnesses factor is diminished where, as here, most of the potential witnesses, although in another district, are employees of a party and their presence at trial can be obtained by that party." *Halbert*, 358 F. Supp.3d at 1286-87 (citation and internal quotation marks omitted); *see also Fruitstone*, 2020 WL 2781614, at *7 ("[T]ransfer may be denied when the witnesses, although in another district, are employees of a party and their presence can be obtained by that party.") (citations omitted).  It is also generally true that "[b]ecause most records and documents can be stored and transmitted electronically, their location is entitled to little weight," unless the movant shows both "their importance to the resolution of the case, and the inability to move or copy them easily." *Combs v. Florida Dep't of Corrections*, --- F. Supp.3d ----, 2020 WL 3033246, *5 (N.D. Fla. May 20, 2020) (citations omitted); *see also Hight v. United States Dep't of Homeland Security*, 391 F. Supp.3d 1178, 1186 (S.D. Fla. 2019) ("[i]n a world with … copy machines, email, overnight shipping, and mobile phones that can scan and send documents, the physical location of documents is irrelevant") (citations omitted).  Know Ink has not done so here, but has instead offered only a general statement that "relevant documents" are located in Missouri.  That is not sufficient.

Second, Know Ink points out that the applicable contract contains a choice-of-law provision specifying that Missouri law governs.  Be that as it may, Know Ink has neither identified material differences between the relevant laws of Missouri and Alabama, nor described any unsettled or complex aspects of Missouri law into which this dispute will obligate the Court to wade.  Under the circumstances, this factor is entitled to little weight in the § 1404(a) analysis.  *See, e.g., Harvard v. Inch*, 408 F. Supp.3d 1255, 1264-65 (N.D. Fla. 2019) ("The forum's familiarity with governing law is one of the least important factors in determining a motion to transfer, especially where no complex questions of foreign law are involved.") (citations and internal quotation marks omitted); *Mirasco, Inc. v. Ghaly*, 2017 WL 4890540, *4 (N.D. Ga. May 30, 2017) ("to the extent that Georgia substantive law applies, both Georgia and California district courts are capable of applying such law").

The Court understands that an Alabama forum is not terribly convenient for a Missouri-based defendant.  But the same would be true of the requested Missouri forum for a Mississippi-based plaintiff.  "Merely shifting inconvenience from one party to another is an insufficient basis for transfer." *Internap Corp. v. Noction Inc.*, 114 F. Supp.3d 1336, 1341 (N.D. Ga. 2015).

Based on the arguments presented here, the Court finds that Know Ink has failed to meet its burden of establishing that the Eastern District of Missouri is more convenient than the Southern District of Alabama, or that other considerations clearly outweigh the forum selected by Omni. Accordingly, defendant's request for a discretionary § 1404(a) transfer for the convenience of parties and witnesses, in the interest of justice, is **denied**.

### III.    Conclusion.

For all of the foregoing reasons, it is **ordered** as follows:

1. Defendant's Motion to Dismiss or in the Alternative to Transfer Venue (doc. 10) is **granted in part, and denied in part**;
2. The Motion to Dismiss is **granted** as to Count 3 in its entirety and as to the portion of Count 2 predicated on the "tort of bad faith" (as opposed to breach of the implied covenant of good faith and fair dealing), and those claims are **dismissed**;
3. In all other respects, the Motion to Dismiss is **denied**;
4. Defendant's Motion to Transfer Venue under 28 U.S.C. § 1404(a) is **denied**;
5. Defendant is **ordered** to file its Answer not later than **September 18, 2020**; and
6. The stay of the deadlines set forth in the Preliminary Scheduling Order (doc. 13) is **lifted**.  The parties are **ordered** to meet and file a report pursuant to Rule 26(f), Fed.R.Civ.P. as soon as practicable, but not later than **October 1, 2020**.

DONE and ORDERED this 2nd day of September, 2020.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE